UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 15-7-DLB

LESLIE PAIGE BROCK                                                    PLAINTIFF

vs.                    MEMORANDUM OPINION & ORDER

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                            DEFENDANT

*** *** *** ***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2012, Plaintiff Leslie Paige Brock applied for supplemental security income (SSI) on June 14, 2012, alleging disability beginning on June 14, 2012. (Tr. 69, 141).  Plaintiff was forty-six (46) years old at the time of filing. (Tr. 141).  Specifically, Plaintiff alleges that she is unable to work due to degenerative disc disease, left leg numbness and pain, chronic obstructive pulmonary disease, sarcoidosis, and depression. (Tr. 23-32, 69).

Plaintiff's application was denied initially and again on reconsideration. (Tr. 69-77; 80-89).  At Plaintiff's request, an administrative hearing was conducted on March 28, 2013 before Administrative Law Judge (ALJ) Bonnie Kittinger. (Tr. 37-68).  On June 24, 2013,

1

ALJ Kittinger ruled that Plaintiff was not entitled to SSI benefits. (Tr. 23-32).  This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 14, 2014. (Tr. 1-7).  Plaintiff filed the instant action on January 15, 2015. (Doc. # 2).  The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication.  (Docs. # 12, 13).

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.*  Rather, we are to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

2

To determine disability, the ALJ conducts a five-step analysis.  Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)**.**

## B.    The ALJ's Determination

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 14, 2012, the application date. (Tr. 25).   At Step Two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease (COPD), and sarcoidosis.  (Tr. 25).  At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 26).

At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. § 416.967(c), with the following limitations:

> The claimant can lift/carry up to 50 pounds occasionally, and up to 25 pounds frequently.  She can stand/walk 6 hours out of an 8-hour workday, and sit 6 hours out of an 8-hour workday.  She frequently can climb ramps/stairs,

3

stoop, kneel, or crouch.   She occasionally can crawl, or climb ladders/ropes/scaffolds.

(Tr. 27).  Based upon this RFC and relying on the testimony of a vocational expert (VE), the ALJ concluded that although Plaintiff was not able to perform her past relevant work as a nursing assistant, she was able to perform her past relevant work as a convenience store clerk and receptionist. (Tr. 32).  Because Plaintiff was able to perform some of her past relevant work, the ALJ found that Plaintiff was not disabled and did not proceed to the final step of the sequential evaluation.  Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the decision. (Tr. 31-32).

## C.   Analysis

Plaintiff alleges five specific errors in the hearing decision and asks this Court to reverse the disability determination.   Specifically, Plaintiff argues that the ALJ failed to consider a specific Listing of Impairment, incorrectly weighed certain medical sources, incorrectly assessed claimant's testimony, and incorrectly determined that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c). (Doc. # 12-1, p. 8-11).   Lastly, Plaintiff claims that the ALJ's decision is "completely rebutted by new evidence which was submitted to the Appeals Council." *Id.* at 8.  Each of these arguments will be addressed in turn.

### 1.   *The ALJ properly considered Listing 3.04 and all other Respiratory Listings.*

At the third step in the disability determination process, the Commissioner considers the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Specifically, the Commissioner must determine whether the claimant's

4

impairments meet or equal one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* These Listings "describe for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525(a). If the claimant can satisfy all of the objective medical criteria, then he or she "will be deemed conclusively disabled and entitled to benefits." *Reynolds v. Comm'r of Social Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

Plaintiff contends that the ALJ failed to consider "whether the claimant either met or equaled the appropriate listing of 3.04" (the listing for cystic fibrosis) based on Plaintiff's "diagnosis and restricted pulmonary function studies." (Doc. # 12-1, p. 9). Plaintiff's argument under the third step is misplaced. A review of the ALJ's decision quickly reveals that the ALJ considered whether Plaintiff met or equaled each and every listing within Section 3 (Respiratory System Disabilities), including Listing 3.04. (Tr. 27). The ALJ specifically considered the applicability of Listing 3.01, 3.02(A), 3.02(B), 3.02(C), as well as "the listing requirements relating to: asthma; cystic fibrosis; pneumoconiosis; bronchiectasis; mycobacterial, mycotic, and other chronic persistent infections of the lung; cor pulmonale secondary to chronic pulmonary vascular hypertension; sleep-related breathing disorders; or lung transplant." *Id.* Therefore, the ALJ properly considered whether Plaintiff met or equaled the appropriate Listings and determined that the evidence did not satisfy the requirements of any respiratory disability contained in Section 3, including Listing 3.04.

2. ***The ALJ did not err in weighing the opinion of Dr. Spangler, a non-treating source.***

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*; *see also Abney v. Astrue*, Civ. A. No. 5:07-394-KKC, 2008 WL 2074011, at *11 (E.D.K.Y. May 13, 2008) (stating that one meeting is insufficient to establish an ongoing treatment relationship). A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. *Id.* In deciding how much weight to give the opinion of a non-treating source, the ALJ must consider the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6).

On November 19, 2012, Dr. Robert Spangler performed a consultative examination of Plaintiff "on referral from her attorney." (Tr. 30; 492-499). After examining Plaintiff, Dr. Spangler found that Plaintiff "displayed awkward gross motor movements, with a slow, stiff gait;" "seemed socially confident but depressed;" "demonstrated good concentration and persistence;" reported that she "cried daily;" and "displayed adequate social skills." (Tr. 30; 492-499). Dr. Spangler also "described the claimant as functioning at the average range

6

of intelligence with no perceptual abnormalities other than slow pace, or as functioning at a low average range of intelligence." *Id.*

Dr. Spangler's diagnoses included the following: "depressive disorder not otherwise specified, moderate to severe; record of cognitive disorder; polysubstance dependence in full remission; alcohol abuse in full remission; and low average intelligence with slow pace and limited math skills." *Id.* Specifically, Dr. Spangler determined that Plaintiff scored a 55 on the Global Assessment of Functioning (GAF) Scale, which "indicated moderate symptoms or difficulties in social or occupational functioning." *Id.* Dr. Spangler further characterized Plaintiff's employment abilities as follows:

> [The Plaintiff had] good abilities to follow work rules; to use judgment with the public; to interact with supervisors; to function independently; and to maintain attention and concentration. She had fair abilities: to relate to coworkers and the public; to understand, remember and carry out simple job instructions; to maintain personal appearance; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. She had poor abilities to deal with work stress, and to understand/remember/carry out detailed or complex job instructions.

*Id.* Lastly, Dr. Spangler "anticipated the claimant would be absent from work more than four days per month due to her mental impairment and treatment." (Tr. 30-31; 492-499).

Plaintiff complains that the ALJ "failed to properly consider the report of Dr. Robert Spangler as an examining source," that the ALJ's decision "to ignore the report is not supported by substantial evidence," and that "the ALJ acted as her own medical expert by disregarding" Dr. Spangler's findings. (Doc. # 12-1, p. 9). The record belies these assertions. In rendering her RFC assessment, the ALJ explained that she was giving "marginal weight" to Dr. Spangler's opinion due to the lack of evidence in support of the opinion and the lack of consistency of the opinion with evidence in the record. (Tr. 31).

Specifically, the ALJ reasoned that Dr. Spangler's opinion was "inconsistent both internally and when compared with the overall record of evidence." *Id.* For example, Dr. Spangler first described Plaintiff as possessing "average intelligence," then later, "low average intelligence." (Tr. 30). Dr. Spangler also stated that Plaintiff's substance abuse was in remission for a decade, but then determined that she would be unable to manage any benefits awarded because of her substance abuse history. *Id.* Because the ALJ explained how much weight she gave to the opinion of Dr. Spangler, a non-treating source, and because she detailed her reasons for doing so in accordance with 20 C.F.R. § 404.1527(c), the Court finds no error in this portion of the ALJ's analysis

> **3.    *The ALJ did not err in assessing Plaintiff's credibility.***

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *2 (July 2, 1996). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individuals' ability to do basic work activities." *Id.* When the claimant's description of his or her symptoms is not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's statements based on the entire case record, including medical and laboratory findings, claimant's statements, information provided by treating or examining physicians about how the symptoms affect the claimant, and any other relevant evidence. *Id.* The ALJ may also consider the

claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects off any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives for pain relief; any other measures used for pain management; and any other factors concerning the claimant's limitations due to symptoms. *Id.* at *3. Credibility determinations based solely on intangible or intuitive notions are impermissible. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Plaintiff complains that the ALJ minimized Plaintiff's "physical complaints of back and neck pain by finding a restriction to medium work" and "improperly rejected the credibility of the claimant with regard to the extent of her psychological and physical conditions." (Doc. # 12-1, p. 8, 10). In the alternative, even if the ALJ had reason to question Plaintiff's credibility, Plaintiff maintains that the ALJ did not make those reasons apparent in her decision. *Id.* at 10. Again, the record belies these assertions.

At Step 4, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably expected to cause the alleged symptoms." (Tr. 31). However, the ALJ determined that Plaintiff's allegations were only "partially credible" and observed that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible." *Id.* at 31-32. The ALJ further explained that Plaintiff's symptoms were inconsistent with the medical evidence:

> When the claimant saw Dr. Spangler in November 2012 at the request of her attorney, she described longstanding mental health problems, including daily crying spells, as well as a distant history of polysubstance abuse. During the hearing she mentioned crying spells and acknowledged a 1999 DUI. Nevertheless, the claimant made no allegations regarding mental health

issues when she saw her primary care physician, Dr. Alam, in January and February 2010 for routine follow-up treatment for sarcoidosis and COPD, and Dr. Alam's detailed treatment notes did not mention complaints or evidence of unusual anxiety or depression.  The medical record does not show, and the claimant does not allege, that she ever sought specialized treatment for any mental health issues.

Further, during the consultative examination with Dr. Hill, the claimant alleged she was unable to work due to back pain, while sarcoidosis seemed to be mentioned only as a past problem.  However, the medical evidence of record includes no objective evidence of a disabling back condition.  During the hearing, the claimant focused on sarcoidosis as the primary reason she cannot work, while describing the back pain stemming from the remote motor vehicle accident as a condition, which, although not improved, she has learned to deal with.

When the claimant was asked during the hearing to identify the conditions preventing her from working, she did not mention depression.  In fact, she did not discuss any mental health problems in any detail until prompted to do so by her attorney, at which time she described her frequent crying and inability to be around people.

(Tr. 31) (internal citations omitted).  Because the ALJ detailed the inconsistencies between Plaintiff's subjective complaints of pain and the objective medical evidence, which shows a lack of specialized treatment, the Court finds no error.

### 4.     *The ALJ's RFC assessment is supported by substantial evidence.*

A RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996).  Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.*  "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e).  The ALJ is only required to

incorporate those limitations that she finds credible in the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff argues that the ALJ erred by failing to find her disabled since substantial evidence supports her disability. Of course, it does not matter if the substantial evidence does support her disability, so long as it also supports a finding of "not disabled." *Her*, 203 F.3d at 389-90 (holding that "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the decision reached") (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also Listenbee*, 846 F.2d at 349. As a result, it does not matter if Plaintiff, or even this Court, believes substantial evidence supports a different disability determination. All that is required of the ALJ is that her decision be supported by substantial evidence. The ALJ has done so here.

At Step Four of the analysis, the ALJ carefully reviewed the record and found that Plaintiff was capable of doing medium work with the limitations specified. (Tr. 27). The ALJ carefully went through each of Plaintiff's impairments and described why they were not disabling. (Tr. 25-32). She noted the lack of objective medical evidence and properly discounted subjective symptoms, to the extent that they lacked credibility. The ALJ then found that Plaintiff's RFC did not preclude her from performing past relevant work, and that she was not disabled. Because the ALJ incorporated the limitations that she found credible in the RFC, there is no error. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

5.     *New evidence requires remand of the case.*

Typically, new evidence forms the basis for a new application, but is irrelevant to the Court's substantial evidence review .  The Sixth Circuit has held "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Accordingly, the Court is "not in the position to consider new evidence in 'deciding whether to uphold, modify, or reverse the ALJ's decision." *Miller*, 811 F.3d at 839 (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  However, "consideration of new evidence may be appropriate on remand if the claimant can show that the new evidence 'is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Miller*, 811 F.3d at 839 (citing 42 U.S.C. § 405(g)).  Although Plaintiff fails to specifically request remand pursuant to Sentence 6 of § 405(g), the Court will construe her arguments regarding new evidence as such.[1]

Sentence Six addresses situations "where a claimant submits new evidence that was not presented to the ALJ but would alter the ALJ's ultimate decision."  *Courter v.*

---

[1]     Plaintiff's other arguments, which concerned whether substantial evidence supported the ALJ's decision, sought remand under Sentence Four of § 405(g). (Doc. # 12-1, p. 11).  "Section 405(g) plainly authorizes two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence six remand)." *Faucher v. Sec'y Health & Hum. Serv.*, 17 F.3d 171, 174 (6th Cir. 1994); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991)(concluding that Congress' intended to limit the district court's authority to enter remand orders to these two types).  While a Sentence Four remand divests the district court of jurisdiction "except to the extent necessary to resolve the application of attorney's fees," the court retains jurisdiction when remanding the case pursuant to Sentence Six.  *See Booth v. Astrue*, Civ. A. No. 11-191-JBC, 2012 WL 3027112 at *3 (E.D. Ky. July 24, 2012)(*citing Smith v. Halter*, 246 F.3d 1120 (8th Cir. 2001)); *Marshall v. Comm'r of Social Sec.*, 444 F.3d 837, 841 (6th Cir. 2006).

*Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012).  Sentence Six states:

> "The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both ..."

42 U.S.C. § 405(g).  Evidence is "material" if it would "likely change the Commissioner's decision." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *see also Courter*, 479 F. App'x at 725.

In her Motion for Summary Judgment, Plaintiff claims that the ALJ's decision "is completely rebutted by new evidence which was submitted to the Appeals Council," including a Lumbar MRI from November 10, 2014 and a Cervical MRI from November 11, 2014 ("November 2014 Treatment Records"). (Doc. # 12-1, p. 8).  Plaintiff also alleges these medical records show "severe narrowing of the L4-L5 and L5-S1 disc interspace," as well as "herniation ... impinging on the left-sided S1 nerve root." *Id.*  Therefore, Plaintiff asserts that the November 2014 Treatment Records, which are supported by other medical evidence in the record, "support much more serious restrictions than those found by the ALJ of medium work." *Id.*

Plaintiff's new evidence satisfies both the good cause and materiality requirements of Sentence Six.  First, there is "good cause" for Plaintiff's failure to incorporate such evidence into the record before the ALJ, because this "new evidence" arose over one-and-a-half years after the administrative hearing, held on March 28, 2013, and the ALJ's decision, dated June 24, 2013. (Tr. 23-32).  Moreover, the new information is material because there is a significant possibility that the November 2014 Treatment Records may

13

change the Commissioner's decision.[2]   If this evidence affects the level of work Plaintiff can perform and/or her limitations in performing such work, it is reasonable to assume that such evidence would affect the ALJ's RFC assessment.  It is tempting to look at the new evidence and predict that the ALJ would have still found Plaintiff was able to perform her past relevant work as a convenience store clerk or a receptionist, which required a light level of exertion and sedentary level of exertion, respectively.   However, given the November 2014 Treatment Records and Plaintiff's claim that the new evidence supports more restrictions than the ALJ previously found, the Court cannot make its own RFC assessment, and doing so would overstep the bounds of its review.  Therefore, the Court must reverse and remand the case.

## III.  CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence.  However, because the Plaintiff has presented new evidence which may affect the ALJ's disability determination, this case must be remanded.   Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1.    Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **granted**;

---

2    The medical records regarding Plaintiff's degenerative disc disease, considered by the ALJ, consisted of: April 1997 records which found "no evidence of a significant bulging or herniation of the disc[s]" at L3-L4 or L5-S1 and "mild degenerative changes," as well as "May 2007 x-rays of her lumbar spine," which "showed signs of degenerative disc disease involving the L4-5 and L5-S1 disc interspace" and "mild narrowing of the L4-L5 and L5-S1 disc interspaces." (Tr. 28; 515-519). Plaintiff's new evidence shows "severe narrowing of the L4-L5 and L5-S1 disc interspace" and "narrowing at the L3-L4 disc interspace." (Tr. 13).

2.      Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **denied**;

3.      This action is hereby **remanded** to the Commissioner under Sentence Six of 42 U.S.C. § 405(g) with instructions to consider the new medical evidence offered by the Plaintiff.  The ALJ shall then review her Step 4 and Step 5 analysis, if impacted by her revised Step 3 analysis;

4.      This matter is hereby **stricken** from the Court's active docket; and

5.      The parties shall **file a Joint Status Report** advising the Court of the progress of remand proceedings every **one-hundred and twenty (120) days**, and shall **file a Motion to Reopen** this action and return it to the Court's active docket upon completion of those proceedings.

This 31st day of March, 2016.

Signed By:

_David L. Bunning_ DB

United States District Judge

G:\DATA\SocialSecurity\MOOs\London\15-7 Brock MOO.wpd